Morning, counsel. Good morning, everyone. We will call our first case of the morning rad versus Attorney General, and we'll begin with you, Ms. Mullen. Let me, if I might, Judge Krause, introduce Ms. Mullen. I'm Brian Wolfman. I'm the director of the Georgetown Law Immersion Clinic, which appears here today as amicus. I wish to introduce Hannah Mullen, who will present our argument this morning. Ms. Mullen is a law graduate, a clinical fellow in our clinic, and an LLM candidate at Georgetown Law. Thank you, Your Honors. Thank you, Mr. Wolfman. Thank you. May it please the Court. Hannah Mullen for court-appointed amicus, the Georgetown Law Appellate Courts Immersion Clinic. I'd like to reserve two minutes for rebuttal. Granted. Thank you, Your Honor. Mr. Rad's offenses of conviction are not aggravated felonies for two independently sufficient reasons. First, they do not necessarily involve fraud or deceit. And second, the government did not prove over $10,000 in victim losses by clear and convincing evidence. First, material falsification under the CAN-SPAM Act does not necessarily involve fraud or deceit. Fraud or deceit requires the defendant to cause their victim to believe something false. Valanci uses almost those exact words, quote, to cause to believe the false, close quote. In other words, fraud or deceit means fooling the victim. Should we be looking to Valanci or Kawashima? And doesn't Kawashima somewhat change our focus as to the conduct rather than looking, for example, to some element of causing a victim to misunderstand or be misled? No, Your Honor. Kawashima defines deceit as the act or process of deceiving and then in parens, as by falsification, concealment, or cheating. The government leans very heavily on that word concealment in Kawashima, but the definition in Kawashima is simply using concealment as an example of a means by which deceit could be accomplished. In our reply brief, we get the example of a definition of murder that includes the similar parentheses as by stabbing, shooting, or beating. Such a structured definition of murder wouldn't imply that any beating was always under all circumstances murder. Ms. Mullen, I share Judge Krause's concern because murder is a crime that has a result element, but the crime at issue in Kawashima 7206 did not require that the government in fact be fooled by the misstatements on the tax returns. It just required that deceit was the act or process of deceiving, as by falsification, concealment, or cheating. So there's no result element in the crime that the Supreme Court held was a deceit crime. Why should we insist on a result element of actually being deceived here? Well, Your Honor, I'd like to take that in two parts. First, I'd like to read Kawashima in conjunction with Valanci. The definition in Kawashima, deceit, the act or process of deceiving, looking at that, that doesn't give us very much detail about what deceit actually means. It's simply the act or process of deceiving. But then that same definition in Webster's third is also referenced in Valanci in more detail. In Valanci, this court read it all the way through the act or process of deceiving, which is then in turn defined as to cause to believe the false. And then also in Kawashima, the Supreme Court, as you referred to, dealt with a crime of tax evasion and then of tax fraud. And when defining material falsification in the context of tax fraud, held that the crime was necessarily fraudulent or deceitful. But here we have an entirely separate definition of material falsification in the CAN-SPAM Act. So we wouldn't look to the Supreme Court's discussion of whether material falsification was necessarily fraudulent or deceitful in the tax fraud context in Kawashima. We would instead look to D2 directly. But let's separate this out. I mean Kawashima says that it is enough that you knowingly and willfully submit a tax return that was false as to a material matter. So you agree the Kawashima crime did not involve a result element, and yet it qualified as an aggravated felony. Is that correct? So you're right, Your Honor, that there was no sort of broken out result element in the crime that the Supreme Court dealt with. But as we discuss in our brief, I think it's a reasonable inference that as the definitions in Valanci discuss in detail, because fraud or deceit necessarily require the victim to believe something false, we can rationally or we can see that definition in play in Kawashima. Okay, so where do you see it in Kawashima? Logically, Your Honor, I don't see it in the text. Where do you see it in Valanci? Well, in Valanci, Your Honor, it's – the court goes into great detail on page 209. In the paragraph starting, the BIA argues to the contrary. And then we see the court quote three definitions of fraud and I believe two definitions of deceiving, and each include an element by which the victim would be caused to believe the false. The definition of deceive is, again, to cause to believe the false. The Black's Law definition of deceit is the act of intentionally giving a false impression. The fraud definitions include the 1956 BIA decision, as consisting of false representations of material fact made with knowledge of their falsity and with intent to deceive the other party, the representation must be believed. Again, the restatement second of torts, a material factual misrepresentation with the intention that the other party rely there on resulting in justifiable reliance, and a similar Black's Law definition as well. On the intent, and in any event here, are we dealing with a conspiracy count as well, so that regardless of the result, if that is something that a defendant was seeking to do, to mislead through falsification, you would agree that that was sufficient for deceit, right? No, Your Honor, we believe that in addition to the mens rea element, the definition also includes that the victim be caused to believe the false. We see that also on page 211 of Valanci. How do you secure that with conspiracy and attempt? Yes, Your Honor, in the context, you're right in the context of subsection you, where the crime where it's an inchoate crime that has not yet been realized, it would make sense then to not require that the victim actually have been caused to believe the false when the crime hadn't actually occurred yet the underlying crime. A couple questions about that then, because you referenced before that the statute provides its own definition of falsity or falsifying, but why shouldn't we read 1037 D2 to define not materially falsify as a phrase, but only the term materially? And if so, then we're just combining that materially with the general plain language understanding of what it means to falsify. And to falsify in Collins Dictionary, for example, is to change or add untrue details in order to deceive people or in the Oxford English Dictionary, for example, to falsify to alter so as to mislead. Doesn't to falsify connote some trickery? And if the statute is defining materially, but not redefining for us what to falsify means, then why don't we have here by its plain terms, a statute that does satisfy our understanding of deceit, including that connotation of some kind of trickery. Yes, Your Honor. I think the definition in D2 goes not only to materially, but also to falsify. Looking to the definition is materially falsified if it is altered or concealed in a manner. The altered or concealed in a manner I think goes to falsify. It's similar, but not identical to the definitions you just quoted. Except that after 2, the heading is materially. This is a provision that's defining materially. That's how it's labeled. And so it's saying materially falsified, but this is not labeled as being a definition of materiality and falsification. It would be kind of odd to say this is a both. That's right, Your Honor. But I also think it would be strange to read a definition that includes altered or concealed to then also make room for a different definition of falsification. I think the definition as a whole seems to be going to both the material and the sort of significance element and also the falsification with the altered or concealed. But despite the header only saying materially. Okay, let's stay on this because the third line of this definition talks about a manner that would impair the ability of recipient. Your argument seems to be that the recipient has to be completely deceived or taken in. But the Kagoshima definition is about the activity or process. And that implies that the deception doesn't have to be completely successful as long as this would impair, make it more difficult, make it harder to identify, locate, or respond to the person who initiated the email or to investigate the violation, then that's enough. So why doesn't that fit with Kagoshima's understanding of this as a process or a tendency being sufficient for it to qualify as deceit? And aside from quoting that passage in Webster's third, the opinion does not sort of give an in-depth treatment of what the definition of fraud or deceit may be. I think we see a much more thorough treatment in Valanci. And again and again, the definitions quoted in Valanci by this court include the necessary component that the victim be caused to believe something false. Was that part of the holding in Valanci? Was that an issue in Valanci? I mean, I'm looking to see where this actually was the issue that was necessary to the holding and was litigated in Valanci. It looks like there are some definitions that help you, but I'm not sure that was actually the heart of Valanci. Well, Your Honor, it's true. There's the two paragraphs with definitions that help us on page 209, but then when you go to page 211, discussing the mens rea element of section 656, the underlying crime of embezzlement to which the court was applying the categorical approach in Valanci, the court then quotes again Webster's third, Oh, excuse me. That was the 1956 BIA opinion. So I read the Valanci court as very squarely relying on that definition of deceit in explaining that the mens rea element of the crime at issue in Valanci is broader than fraud or deceit and could not be categorically considered a crime involving fraud or deceit. The courts stated squarely, nor does it require deception, which is defined as causing another to believe what is false. But the reason is that a paragraph or two later, it says you can either have an intent to fraud or an intent to injure. So that means the mens rea is broader because you can have an intent to injure that doesn't necessarily have to involve injury via defrauding or deceiving. That's a mens rea issue. Yeah. Well, right, Your Honor, but in parsing out the distinction between intent to injure and intent to defraud, the court is looking to the definition of defraud. So I think we can understand the court as relying on those definitions that it helpfully lays out on page 209. Counselor, we'll go over a little bit. And we'll give that opportunity to your colleague on the other side of the aisle as well. Judge Restrepo. Thank you. Just quickly, it seems you all agree the categorical approach is the relevant matrix here. Could you give us an example of a violation of the relevant statutes here that include fraud or deceit but don't include a material falsification? Excuse me, Your Honor. I can give an example of the reverse, if you will, of a crime of material falsification that does not necessarily involve fraud or deceit. Is that what Your Honor is asking? Yes. The Can-Spam Act prosecutions in Kilbride are an example. There, the defendants were convicted of materially falsifying header information where the email's return paths were created by taking the recipient's username and placing it before the domain name. The court described that conduct as concealing the defendant's identities. They were prosecuted as materially falsifying, but that conduct was not fraudulent or deceitful. And the government seems to agree with this point. In their brief on pages 25 and 26, they agree that in Kilbride, no reasonable recipient would have been misled into thinking he sent himself pornography. So there we have it. It's an example of the government prosecuting conduct as material falsification under the Can-Spam Act, even though, as the government agrees here, that conduct would not have led the victims into believing something that was false. So the core issue then is, is it enough to – does the deceit require creating a false belief as to the source, or is it enough to merely hide the truth? Now, I took Kawashima to say that, you know, deceiving as by concealing, that it suffices to hide the truth, and it deceives someone that way. And you're saying, no, you have to create an affirmative impression of something that isn't the case. But how does that square with Kawashima? Again, Your Honor, I think looking to the actual text of the definition quoted in Kawashima at page 484, deceit is defined as the act or process of deceiving as by falsification, concealment, or cheating. So we're not arguing that concealment cannot under any circumstances be deception. Kawashima lays out that concealment may be a means by which a victim is caused to believe something false. But material falsification sweeps more broadly than that. Material falsification under the Can-Spam Act, the concealment does not necessarily have to cause the victim to believe something false. The concealment does not have to be deceitful. And so it sweeps more broadly than that Webster's third definition laid out in Kawashima. Will it be as simple as misleading as to who is sending the emails? Yes. Yes, Your Honor. That's right. And indeed, it's the material falsification includes concealment that impairs the ability of the email recipient ISP or law enforcement to identify the sender. So even if the email sender could eventually be identified, if the alteration or concealment of the header information made that process more difficult, impaired the ability to identify, locate, or respond to him, that would constitute material falsification under the Can-Spam Act. But what about the verb knowingly? Does the mens rea provisions here have any bearing on that, that it has to be done knowingly? No, Your Honor, because knowingly is separate from the material falsification element. It's absolutely right that the material falsification has to be done knowingly in both A3 and A4. And then there's also the mens rea prong of intentionally initiating transmission of the emails. But pointing out that the material falsification has to be done knowingly just begs the question of what exactly has to be done knowingly. What does it mean to knowingly materially falsify something? Yes, Your Honor. I don't want to cut my colleagues off if they want to keep exploring this issue. At some point, I'd like to hear you talk about the intended versus actual laws issue. But please, if my colleagues want to stay on this, I don't want to jump ahead. Before we move on to that subject, I just wanted to ask, because in the civil provision here, there's also a definition of materially. And at 7704, we have language that's virtually identical, except that it makes a little more explicit that it's only defining the term materially. At sub 6, the term materially when used with respect to false or misleading header information includes, and then the rest of it is verbatim. Are you arguing that there's a different meaning for materially in the civil section than the criminal? And if so, why? Um, no, Your Honor, we haven't made that argument. This is to make clear that it's only defining materially, not defining the term materially falsifies. I understand, Your Honor. I think looking at the text of D2, my answer remains the same as before. I think it would be strange to read D2 as only defining materially header aside, because it includes that altered or concealed language. I understand, Your Honor. And even, Your Honor, even if it's only read to define materially, I think that our argument remains the same, because, again, altered or concealed in a manner that would impair the ability of the recipient of the message to identify, locate, and so on and so forth. It still doesn't require the victim to be caused to believe anything false. So the bottom line conclusion that material falsification doesn't necessarily require fraud or deceit would remain the same. All right. I think we understand your argument on that. So let's talk a bit about the loss amounts here. And you are suggesting that the BIA should not have looked at or considered the PSR. But we often look to sentencing documents for loss amounts where there's been the opportunity for the defendant to challenge those findings in a PSR. Why shouldn't that be the case here? Well, Your Honor, I don't believe that we're arguing that we can't look to the PSR. I believe we're arguing that what's in the PSR is not enough for the government to carry its burden to prove clear and convincing evidence. The government here made no effort at all to quantify victim loss. On page 133 of the administrative record at footnote 5 in the IJ's decision, we see that the PSR indicated that victims were not identified, restitution was not sought, and the government determined that identifying victims and their loss would be too challenging. We also see that the record contains absolutely no indication at all that the victims of Mr. Rad's spamming offenses suffered any losses. And instead, the government and the IJ and the BIA relied only on the PSR's determination of Mr. Rad's gain from the securities fraud offenses of which Mr. Rad was acquitted. So that's doubly wrong. Offender gain cannot be a proxy for victim loss under the INA in a way that would be analogous to the sentencing guidelines. The schemes are simply different. It can never be a relevant way to calculate or infer victim losses. No, Your Honor. It can be relevant. It can be a piece of evidence in calculating victim loss. But it's not enough for the government to simply calculate offender gain wholesale and not make any effort to then tie that persuasively to a calculation of victim loss. And the government is very clear. I agree. You're right. It can't be dispositive. It can be a piece of evidence. But I think the important battle here is, so how do you use that evidence? If the amount of gain were $10,001, there's no way you could infer from that by clear and convincing evidence that it's $10,000. But if the amount of gain is $500,000, can't the government use that as a starting point for inferring that maybe not all of it came out of the victims' pockets, but it's extremely likely that at least one-fiftieth of it did? I mean, obviously, this may require remand or something, but the government is not foreclosed from arguing those inferences on remand, and you wouldn't be foreclosed from resisting them. Why isn't that the way to parse it out? Your Honor, I think that's right in the abstract, that in some cases, on some facts, in some records, a massive offender gain would be persuasive evidence of victim loss exceeding $10,000. But that's not true here. That's not true on this record, and that's not true for this offense. The record doesn't show any losses to any victims of Mr. Radd's spamming offenses at all. And that's not surprising, because as we lay out in our brief, unlike traditional economic crimes, spam violations don't require a sender's gain at the victim's expense. The average spam offense simply doesn't result in pocketbook losses to the victims. It can be annoying to sort through your email when you get spam. It may take up somebody's time and attention, but the spam violations don't directly result in pocketbook loss. Let's assume you did send it back. I'm sorry. Judge Krause, go ahead. For immigration purposes, we're taking a circumstance-specific approach. So why aren't we looking here to losses that were caused, at least in part, because of the use of the false headers, false accounts, false domain names? Yes, Your Honor, that's exactly my point, that the record doesn't reflect any losses from those offenses. The government made no effort to quantify them. And in fact, there isn't even sort of a drive-by reference in the indictment or in the PSR of any spamming victims suffering any loss at all. The only reference to victim losses, which is made in passing and not sort of quantified or investigated further, are losses to victim investors of the securities fraud. For example, at paragraphs 40 and 51 of the PSR, there's a discussion of victim investors losing when Elliott manipulated the shares of Star. Why isn't it sufficient tethering if that scheme, regardless of whether he was convicted of securities fraud or not, but it was conducted through the use of the false headers and false domains? Your Honor, because the INA at section 1227A2A3 requires removal orders to be based on convicted offenses, any alien who is convicted of an aggravated felony is deportable. And ALACA reads this text in concert with MSUB1 and requires the victim losses under MSUB1 to be calculated based on the offense of conviction. ALACA is very clear. We may not consider losses tied to charged but unconvicted conduct like the securities fraud here. And the Supreme Court in Mioan citing ALACA again restated loss amount cannot be based on acquitted or dismissed counts. Aren't the convicted counts here a but-for-cause, maybe not the sole one, but a but-for-cause of the losses to investors? Your Honor, but-for-cause isn't the test. ALACA is very clear. For example, in ALACA, the defendant had been charged with three counts of aiding and abetting bank fraud. The total victim losses in that scheme were around $48,000. But the defendant pled to only one count of aiding and abetting bank fraud with a victim loss of about $5,000. Even though all of those three counts together were described by the sentencing court as part of a common plan or scheme, the court was very clear they had to cut off the calculation of sentencing losses at the one count of conviction because the text of the INA strictly requires removal orders to be based on the offenses of conviction. And it would allow the government to do a runaround of the conviction of the acquitted or dismissed counts to then calculate for the purposes of removal victim losses stemming from those charged but unconvicted counts. If we were to remand this on the loss issue, what would the hearing look like or what sort of evidence would, from your perspective, would the government have to produce to establish loss? Your Honor, I think the government would have to establish, by clear and convincing evidence, over $10,000 of victim losses stemming specifically from the spam offenses of which Mr. Radd was convicted. And as I've reviewed, at least based on what's in this record, that would be extremely challenging because spam offenses typically don't result in any victim losses, at least in sort of the direct pocketbook sense that the INA is focused on. So I'm not sure what a remand would accomplish here. I'm not, it doesn't, I see no evidence in the record that the government would be able to produce clear and convincing evidence of over $10,000 in victim losses tied to the offenses of conviction here. Okay, we'll hear from you again on rebuttal, Mr. Newell. Thank you. Good morning. May it please the Court, my name is Craig Newell and I'm here on behalf of the Attorney General. The Court should deny this petition for review because Mr. Radd's convictions for conspiracy to commit false header spamming and false registration spamming constitute an aggravated felony offense that involves fraud or deceit that resulted in a loss to his victims exceeding $10,000. Now, there are two parts, the fraud and deceit part and the loss part. The fraud or deceit part really turns on how we determine what deceitful conduct means, and it is a broad inquiry. The Kawashima definition of an actor process of deceiving by falsification, concealment, or cheating is the framework that we use. It is looking at the actor, what he or she did, not its effect on the victim, whether the victim detrimentally relied on it or such as that, whether they actually believed the thing to be false. Mr. Newell, let's grant that's right. Let's grant there's no result element here and that, you know, whatever was in Valanci doesn't take precedence over Kawashima. Even if that's right, Ms. Mullen gives us the example of Kilbride. So, you don't have to actually wind up deceiving someone, but it has to be calculated to leave someone with a false impression. And if you're using the recipient's email address in the header as if it were the sender, no recipient is going to think, I sent that email. So, I think that's their best hypo. What's your response to that? If a recipient gets this email and sees that it's from me, how is that deceptive? They're right in the fact that in Kilbride, those email addresses, you're getting an email that has your name as the name of the email. You're not going to believe you're sending it to yourself, but that once again looks at how the victim or the recipient is interpreting, whether they're believing or not what was sent. But what is happening here is you are hiding the truth. In Kilbride, they were hiding the truth of who the sender was. They were sending it and say it was myself. It would be Craig Newell at some gibberish.com. That's what they were using. And so, they're hiding the truth of who the sender is, and you have no way to respond and stop this email. So, that's within the Can't Spam Act. Ms. Mullen's point is, let's look at Kawashima. It does talk about concealment, but it has to be deception by concealment. So, what's the deception? Is the deception maybe that the recipient might think that his account was hacked or something, and that it didn't come from some spammer who was hiding it? I mean, where's the deception, the tendency or intention to create a false belief of some sort in the recipient, whether it succeeds or not? How is the Kilbride situation deceptive? It's deceptive in the fact that you are sending this email address out, this email out with this fake email address, that hides the truth of who the sender is. Anytime you're hiding the truth of something, you have committed deceitful act. Whether someone believes it or not is another thing. But wouldn't that simply be true of any pseudonym that someone's using? If someone sends it from anonymous.com, the recipient will surely understand this person simply doesn't want to be identified, maybe for privacy reasons, maybe for other reasons. But where is their deception in that? Well, those type of anonymous, you know, most people are not using their full formal legal name in their email address. The CanSpam app is not presupposing that people are using their full legal name. For example, Amicus gives the hypo of an author who uses a pseudonym. And he or she has a website and they want to send out emails to people to sell their books. Say they're John Doe at JohnDoeBooks.com. While they're being anonymous, while you don't know John Doe's real name, you totally know that it's coming from the domain name John Doe Books, that you can interact and get to John Doe Books and tell them to stop sending these emails. But that's within the CanSpam app. That's within the CanSpam app. Judge Krause's question is getting it for purposes of immigration law. Is it enough to be hiding something or doesn't deceit require at least a tendency to create a false or misleading impression? Now, we have to talk about header information. I don't think just using an anonymous email suffices. But if you blacked out the header information but put nothing false in there, would that be deceptive? You blacked out the header and put nothing false in the text of the email? If you just somehow erased all the header information or blacked it out and didn't put anything affirmatively false in there, would that be deceptive? I think your colleague's point, Ms. Mullins, is you have to do more than hide the truth. You have to have a tendency at least to create a false impression. I see what her argument is, but any – for example, if you look at the crime in Kawashima, which is a willful filing of a false tax return, or in Sing, which is a false statement in a bankruptcy proceedings, you can be convicted of those for things that may have – the bankruptcy judge may have not been – may have not – what I'm trying to say – may have not had a false impression, by the way, and may have knew immediately that you were telling him a falsehood. And so it's really looking internally at what the actor is doing, what the actor is doing, and not this other part of whether it's creating a false impression. That leans too heavily on whether there was detrimental reliance. And we have to remember the scope, as explained in Kawashima and then in Shuler, is that we're not looking for these formal elements of deceit. We're looking for conduct involving deceit, an affirmative act of simply falsification, concealment. The problem that in the Cannes Spam Act itself, it's not simply about impairing the ability to locate or respond or conduct an investigation. It's even impairing the ability of the recipient to identify the person who's the sender. And so with that, why isn't it, as a technical matter, a violation of the Cannes Spam Act when you have an anonymized name that appears on Craigslist? It no longer, for example, is showing your actual identity. It's been randomized to numbers and letters. Does that impair the ability to identify who's actually sending it? Yes, and the words identify, locate, and respond, there is no case law out there finally parsing whether someone did one or the other. One of the three is enough to be convicted. It's more properly understood to take that triptych of words there and say that those are all the ways that someone can trace an email back to its actual sender. Sometimes it's through identifying them, locating them, or responding to them. The purpose is you want to stop this spam email. And so it shouldn't be finally parsed like that. When we're talking about an approach, we're trying to compare these elements to a broad, deceitful conduct comparison term. It doesn't say impair the ability to trace the email back or to respond directly to the sender. It provides these as disjunctives. And if impairing the ability of someone to identify, to accurately identify who's sending it is sufficient for a violation of the Cannes Spam Act, then why wouldn't someone who, say, you're a pop singer and well-known on Fortnite, and you decide you want to send out your emails as coming from Marshmallow. Why isn't that itself a violation of the Cannes Spam Act because it's difficult to identify who you really are? Right, and I see that example. But again, there are two things that there is nothing out there that says that Cannes Spam criminal provisions are violated just because you can't locate the actual person. And we need to remember that this is not just a one or a few off interactions. Those are especially excluded as transactional or relationship emails. To hit the spam level, you have to send, I think, 124 hours, 1,030 days. And here, if you look at the pre-sentence report, Mr. Rad's spamming scheme involved almost over a two-year period, 121 campaigns, and that one of his spammers, Mr. Brad, sent out 800,000 to 900,000 emails a day. But we're talking about the categorical approach here. Right, right. So I don't think the work can be done by the number of emails. The work has to be done by the word falsifies. And so the question is, does the word falsifies provide a safe harbor for the person who's anonymous or gives a whimsical name but is not deceiving someone about the person's real name? I think that's right. I think they're— Now, Ms. Mullen's response was the definition in D2 is a definition of materially and falsifies. So which is it? Is falsifies doing independent work or is falsifies limited to what is in D2? I think falsify is doing—I'm sorry, D2 is just explaining how you go about—how you make a falsification material. And to do that, this is a highly technical area, so sometimes an altering is enough or a concealment is needed. But the idea is, how does it become material? It becomes material when you are impairing this ability to find the actual sender. It's impairing the ability of a recipient of law enforcement or of an internet service provider of finding this person out. It is hiding the truth of the actual sender. This is not just being anonymous on the internet. This is, you know— How is hiding the truth of the actual sender? How does that carve out the author who prefers to use a pseudonym or, you know, the singer who has a billion followers and wants to send out something about his next album using a pseudonym? Because if that author or that singer is still using a true domain name, they would be able to—a person receiving their emails would be able to stop them. It's not the deception. If an anonymous singer was anonymous at Google or Gmail.com, you would know that Gmail, which is a true domain name, that you could trace them back to that, and that's sufficient. They wouldn't be violating the can spam criminal provisions. That may be to locate, but what about to identify? What does it mean to—if you're altering by impairing the ability to identify the sender? Well, in that case, it's not identifying—I think the way to think about it, it's not identifying—say it's myself. It's not being deceptive in hiding it through gibberish domain names or fake domain names or, you know, in Mr. Rad's case, it was sent through botnets of infected computers. It can be easily traced back to the sender. That's how I understand the locate—what is it? Identify, locate, or respond to the actual sender. Not this exact identification. Oh, this is, you know, this famous person hiding behind an anonymous name. You know, you're going to have to read a lot into falsify to understand impairment of identity to do all of that work that you were just describing. But the jury instructions, when it comes to, for example, 1001 false statements, just defines to falsify as to make an untrue statement that is untrue and that is known to be untrue at the time made. Where someone is holding themselves out with a different name, they know that that's not true. Or if they've set up a, you know, some domain name that some catchy name that they would like to use, but it was for purposes of putting a new twist on their book or their business. Why wouldn't that fall under the definition to falsify? And as a technical matter, and again, we're looking at this as a categorical matter, it would then fall within the Cannes Spam Act. It would fall within the Cannes Spam Act if, in addition to using this anonymous name, they had the specific intent to impair the ability for someone or law enforcement or an internet service provider to get back to the domain name or account that this email is coming from to stop the email. So you need that in addition to just the fake name. Where in the statute does it say that? Because I see it saying impair the ability of the recipient to identify or locate or respond or investigate. Right. That would be in the definition of material in D2. And so in addition to the false anonymous email name, or it would be you are doing it with this intent to hide the truth of where this email has really come from. So you as a recipient or as the law enforcement or the internet service provider can't stop these or investigate these spam emails that should not be being sent. Let me ask you about loss for a minute. Yes, Your Honor. Was the record sufficient to establish loss to the victims? Yes, it was, Your Honor. Tell us how it was. Okay. Under the circumstance specific approach, we're looking at the factual circumstances of Mr. Rad's crime itself. And here, the district court held that because of the vastness of this spamming operation that went for almost two years, 121 campaigns, 40 different companies, millions of spam being sent out. And the purpose of this was this stock promotion scheme that Mr. Rad and his conspirators owned this stock. So the spam was sent out to get people to buy the stock, and when the price went up, Mr. Rad and his conspirators made a ton of money. They made $2.8 million. And because of the vastness of the scheme, it was not feasible to figure out victims and their particular loss, so the gang was used as a proxy. Are you troubled by the fact that no restitution was ordered and the threshold and the sentencing is lower than the threshold in a removal proceeding in terms of the burden of proof the government has to satisfy? No, I'm not, Your Honor. Because in this particular case, we are not asking for any kind of gain to be used as loss in all cases. The facts of this case is what makes the gain all right. We have a $2.8 million gain. It was a conservative estimate that this was the gain from the spamming operation. And yes, while Amicus argues that spamming crimes normally don't involve pocketbook losses, this one here was for the purpose of increasing stock prices that they owned and so that they could gain all this money at the expense of others. The gain did not come out of nowhere. And so Mr. Ratt at sentencing, no doubt, never disputes the vastness of his spamming operation. He does not dispute that the purpose of the spamming operation was the stock's promotion idea. And so – and there's no – while the burden is lower, this is what Nijwaan contemplates and instructs. He said, yes, the burden is lower at sentencing. So this material may not be sufficient for removal proceedings that need clear and convincing. And that's why we look toward if there's any conflicting evidence in the record to say, oh, we can't look at that sentencing evidence. And here there's no conflicting evidence. Mr. Newell. Yes, Your Honor. Two related questions. One is speak to whether we should be looking to intended or actual loss. And second, if we remand, how are you going to establish intended loss or how are you going to establish actual loss? All right, Your Honor. On the intended or actual loss, here there are two things of note to begin with. Unlike the Aileen and Singh, Mr. Radd was charged by DHS as both under subparagraph M1 and subparagraph U, the conspiracy. So both of them were under consideration. Now, while not clear from the board's decision, it does appear that what this gain was being used as actually was lost by the investors who were left holding the bag from this spamming stock promotion operation. However, I understand if you're uncomfortable saying that this use of gain as proxy is not actual evidence. It is certainly not that it was intended or potential evidence. We have a conspiracy amongst Mr. Radd and his conspirators to do this. They gained $2.8 million. And that differential does matter and should be taken into consideration for whether it is clear and convincing evidence. It certainly had the potential to have impacted at least $10,000 worth of the investments of other individuals when they have gained such a great amount of money. Why shouldn't we here be taking notice of the actual sentencing proceeding, which rather perplexingly the government didn't bring to our attention. But the district judge at sentencing says we don't know who, if anyone, actually invested in these stocks, nor do we know how the marketplace in terms of profit or loss on these securities did or how any loss may have been allocated to any particular victim. We just don't have a real good sense of who lost what money, if any. If that's the district court's conclusion at sentencing and then went on to expressly impose the enhancement based on gain under the guidelines rather than on victim loss, why should we at this point under the INA be willing to consider gain at all as evidence of loss? Right. And the district court, those statements are recognizing the vastness of this scheme. And he's not imposing an enhancement because he gained so much from this scheme, but it's an enhancement because the loss was not feasible to be calculated. The gain is being used as a surrogate of the loss. So it's still related to the loss. For the district court judge to have found that, he would have had to find a logical relation between the gain and the losses that would have been the result of such a crime. But isn't that the point that there's no evidence here that there even were victims? That he's not faulting the government for not bringing that forward, but perhaps that's why there wasn't a conviction on securities fraud. There was a conviction on the canned spam act counts. But given the district judge's observations at sentencing, that there's been no evidence that's presented of any victim losses, and that he's sentencing based on the gains to the defendants, how could we find by clear and convincing evidence that there's more than $10,000 in losses to victims for INA purposes? We can because under the circumstance specific approach allows you to look at the fact that here, Mr. Rad and his conspirators were able to gain such a great amount of money, $2.8 million, the conservative estimate of it. Under these circumstances, someone had to have lost money of $10,000. That's an inference that can be made. That's the beauty of the circumstance specific approach. We can look to what would be real world or common sensical ways of viewing evidence. That's why the district court judge himself was like, this is so vast, I can't figure out if anyone lost money because we're talking about millions of emails, 40 different types of stock over almost two years. But hey, you guys made $2.8 million off of this criminal scheme. It had to have caused damage. We have to assume for that theory that there was a fraud and there were fraud victims who had losses as a result of a fraud, but we don't have any conviction for fraud. So how can we reconcile that with our obligation to separate out what was actually convicted conduct and what wasn't? Right. Under ALACA and other, which was adopted in Nichuan, and you can look at Fan Wang, whether it's tied or tethered, which are, we're not talking about mathematical precision here. But it's undisputed that the purpose of the convicted spamming scheme was the stock promotion concept. Whether that was a technical securities fraud violation is another question. It's very much like in Fan Wang where the actual, I think it was buying futures contracts was not charged, and he was charged for false statements with respect to those contracts. They are sufficiently tied together, which is what occurred here. There would have been no spamming crime if there wasn't this underlying motive. Mr. Radd nor Amicus dispute that this was the motive, and motive is a factual circumstance that we can take under consideration. And when we're talking about such a significant amount of gain, we can conclude that there was a $10,000 loss. In other cases, admittedly, that's not going to be the case. Counselor, there needs to be proof of either actual or intended loss. Right. The government didn't put in that proof initially. We sent it back already once to the BIA with explicitly pointing out that they're on the loss prong with relevant case law that additional findings could be made. The government, it appears, did not request an evidentiary hearing or attempt to put in additional record evidence then to substantiate losses. Why, even if we agreed with you that you could make that proof based on pulling evidence together from the trial to show actual losses or intended losses to particular victims, why should we be giving the government a third bite at the apple, remanding it again? Your Honor, we think on the face of the evidence and the board's decision, this court can uphold this removal order as a finding of either actual loss or an intended or potential loss. There is sufficient clear and convincing evidence of that either way. The word would be remanded. The judgment's denoting that he was convicted of count one, including the pump and dump scheme. The BIA doesn't seem to be distinguishing at all that there wasn't a conviction for conspiracy to commit security fraud. So you agree we can't affirm on that basis? I think the board gave Mr. Red the benefit of the doubt that he wasn't convicted of this conspiracy. The security fraud wasn't part of that count one. If you look in the record of conviction in the administrative record, there's that jury verdict form with the blanks and the check marks of guilty and not guilty for the various counts. And the security fraud is blank either way. And that is why the agency gave the benefit of doubt and just looked at the false header spamming and the false registration spamming as the substantive crime underlying the conspiracy. If you look at the other documents, the judgment documents for the district court does say – sorry, Your Honor. I'm sorry to interrupt, but the BIA opinion says to the extent that the respondent asserts that according to the jury sheet he was not convicted of conspiracy to commit a pump and dump scheme, the judgment clearly denotes that he was convicted of count one of the superseding indictment. The BIA seems to be under the misimpression that that includes a conspiracy to commit a pump and dump scheme. Where do you see the BIA distinguishing that the losses that it's concluding are basis to affirm that AIJ were not related to the scheme but only the canned spam act counts? I understand the board to be only looking at the canned spam act counts. It's acknowledging what Mr. Ratt is arguing about that jury sheet. And I think in its prior decision it said the same. And if you look how it analyzed this case on the other pages, it only looked at the false header spamming and the false registration spamming, whether they involved fraud or deceit. Why I'm arguing – I'm not arguing that the securities fraud is that that conviction is to be taken under consideration. I'm saying there is this factual circumstances that is undisputed that the purpose of the spamming, the motive for the spamming operation was this stock promotion idea. That's how Mr. Ratt made all this money off the spam. And that is how he committed this spamming operation on this specific occasion. And while a normal spam case may not only result in maybe incidental losses to its victims with annoying emails, it doesn't – here this spam was directly connected in a way to gain money at someone else's expense, the other investors in these stocks. And so that's why in this case there is a loss for that spam crime. My colleagues have additional questions. Thank you, and we'll return to rebuttal. Thank you, Your Honors. Thank you for your time. Thank you. Ms. Mullen. Thank you, Your Honor. Your Honor, I'd like to start on the material falsification point and then go to victim loss. On the point of whether the definition in D2 is defining falsifies or materially falsifies, I think the bottom line is that it doesn't matter because we see in Kilbride that a defendant can be convicted of materially falsifying header information or domain registration information under D2 for conduct that is not necessarily fraudulent or deceitful. But, Ms. Mullen, let's talk about Kilbride. It's your best example. Wouldn't someone who received that email, and Kilbride was not an immigration case and didn't raise this, you're just using it as a factual example. That's correct. Wouldn't someone who got that email in Kilbride say, hey, my account has been hacked. Oh, my goodness. Wouldn't that be deceptive? Maybe it's momentary, maybe you get past it, but that's enough to facilitate the success of the scheme. That might happen, Your Honor. We can imagine a situation in which that would happen, but the government doesn't need to prove that in order to prove material falsification under the CAN-SPAM Act. That's not the least of the acts required. Except it's, you know, all it has to be is be entailed. It doesn't have to be an element of the crime. You know, Kagoshima says you don't have to have an element that requires deceit or fraud. It just has to be that the steps that are taken have to somehow presuppose it. And if we read Kagoshima to say there just has to be a tendency or an act or a process of deceiving, why wouldn't that be enough? Because there still isn't necessarily that. It doesn't even necessarily entail deception in the way that you're describing. The government agrees with us on pages 25 and 26 of their brief that no reasonable recipient would have been misled into thinking he sent himself pornography. The government agrees with us here that Kilbride does not require fraud or deceit for that prosecution under the CAN-SPAM Act. So even though we can maybe imagine hypotheticals in which a recipient would be confused by finding an email with their own username in the front line, a reasonable recipient, the government agrees, would not have been. And in any event, the government isn't required to prove any such tendency or entailment in proving material falsification under the CAN-SPAM Act. On victim loss, Your Honor, again, the government is relying, both in their briefing and my friend on the other side here today, is relying only on gains from the securities fraud. And there's no indication of victim losses from the spamming crimes at all in the record. As Judge Krause referred to in her questioning, the government has already had a second bite at the apple in proving victim losses here on remand, and they added nothing to the record. So giving the government, as Judge Krause put it, a third bite at the apple, I don't think there's anything to be gained from that here. And ALACA is very clear that we can't look to charged but unconvicted conduct in calculating victim loss. And that's what the government relies very heavily on. They rely very heavily on the alleged offender gain from the securities fraud conduct. But again, that's doubly wrong. Offender gain is not sufficient to prove victim loss, and looking to the securities violations is not permitted here under ALACA and NEOWAN. The Court has no further questions. Okay. Thank you, Ms. Mullin. Mr. Newell, we'll take the case under advisement.